Matter of DeRoberts Plastic Surgery (Commissioner of Labor) (2021 NY Slip Op 05372)





Matter of DeRoberts Plastic Surgery (Commissioner of Labor)


2021 NY Slip Op 05372


Decided on October 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 7, 2021

531635
[*1]In the Matter of DeRoberts Plastic Surgery, Appellant. Commissioner of Labor, Respondent.

Calendar Date:September 13, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Mackenzie Hughes LLP, Syracuse (Christian P. Jones of counsel), for appellant.
Letitia James, Attorney General, New York City (Dawn A. Foshee of counsel), for respondent.



Clark, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed December 10, 2019, which assessed DeRoberts Plastic Surgery for additional unemployment insurance contributions.
DeRoberts Plastic Surgery (hereinafter DPS), a professional corporation and medical practice that specializes in plastic surgery and related procedures, was founded and organized by Dean DeRoberts, a board-certified plastic surgeon. To provide services to its patients, DPS retains the services of, among others, anesthesiologists, surgical technicians and nurses (hereinafter collectively referred to as the medical professionals). As a result of an audit for the years 2011, 2012 and 2013, the Department of Labor issued a determination that assessed DPS additional unemployment insurance contributions based upon remuneration paid to, among others, the medical professionals. The Unemployment Insurance Appeal Board ultimately sustained the Department's determination assessing additional unemployment insurance contributions for the medical professionals, finding, in relevant part, that DPS exercised or reserved the right to exercise sufficient supervision, direction or control over the services performed by the medical professionals so as to establish an employment relationship for purposes of additional unemployment insurance contributions. DPS appeals.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the appeal board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136 [2020]; Matter of Thomas [US Pack Logistics, LLC-Commissioner of Labor], 189 AD3d 1858, 1859 [2020]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d at 136-137 [internal quotation marks, brackets and citations omitted]). "Where, as here, the work of medical professionals is involved, the pertinent inquiry is whether the purported employer retained overall control over the work performed" (Matter of Dillon [Commissioner of Labor], 163 AD3d 1307, 1308 [2018] [internal quotation marks and citations omitted]; see Matter of Salamanca Nursing Home [Roberts], 68 NY2d 901, 903 [1986]; Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d at 736; Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d 755, 756 [2019]). "Further, an organization which screens the services of professionals, pays them at a set rate and then [*2]offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d 1210, 1210 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Ryan [La Cruz Radiation Consultants, Inc.-Commissioner of Labor], 138 AD3d 1324, 1325 [2016]).
The record reflects that DPS screened the medical professionals that it retained by requiring them to provide proof of licensure or certification, as well as proof of insurance, before securing their services, and that DPS maintained a credential file on each medical professional that it used. DPS advertised for patients, established the fees that patients would pay for their selected procedures and required patients to pay a deposit and the entire amount of the fee in advance of undergoing the procedure. Upon scheduling a procedure for a patient, DPS would send an email to its pool of credentialed medical professionals, informing them of the date and time of the procedure and seeking coverage for that procedure. Once a team of medical professionals was assembled, DPS would send a follow-up email confirming the details of the procedure.
Although the medical professionals would bring some of their own personal equipment to the scheduled procedures, DPS provided the supplies, equipment and operating space "used in the rendition of services and paid all expenses of maintenance thereof" (Matter of Myron Goldstein, P.C. [Roberts], 61 NY2d 937, 938 [1984]). Each medical professional would arrive prior to the start of the procedure and would remain until each of their assigned responsibilities were completed. DPS managed the billing and collection of fees, as well as any refunds owed to patients, and coordinated the scheduling of in-office appointments, consultations, procedures and follow-up visits with patients. DPS also set the rate of payment for the nurses and surgical technicians using industry standard rates. If the cost of a procedure exceeded the amount that the patient paid for a procedure, DPS would typically bear the cost of that expense by taking it out of the surgeon's fee. DPS was responsible for the outcome of the medical procedures and would handle any patient complaints. Notwithstanding evidence in the record that might support a contrary conclusion, we find that the foregoing constitutes substantial evidence to support the Board's determination that DPS retained sufficient overall control over the work performed by the medical professionals to establish an employment relationship (see Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d at 736-737; Matter of Roccosalvo [Gaiton-Commissioner of Labor], 191 AD3d 1060, 1061-1062 [2021]; Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d at 757-758; Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d at 1210-1211; Matter of South Shore Med. Servs. [Hudacs], 183 AD2d 1093, 1094[*3][1992]). To the extent that we have not addressed any of DPS's remaining contentions, they have been considered and found to be without merit.
Egan Jr., J.P., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.